THE STEVENS POINT BOOM COMPANY vs. REILLY and another.

CONSTITUTIONAL LAW: STATUTES: CORPORATIONS. *(1, 2) How charters amendable. (3) Effect of ch. 399 of 1876 to legalize previous acts of corporations. (4) Act construed.*

BOOMS IN NAVIGABLE STREAMS. *(5–7) Franchise to maintain boom not a license to trespass on land. Transfer of such franchise. (8) Boom maintainable by riparian owner without special grant. (9) Rights of upper and lower riparian owners.*

PRACTICE. *(10) Effect of reversing order for purpose of modification.*

1. While a special charter existing before the constitutional amendment of 1871, may be amended by special statute, no corporation, except cities, can now be created in this state by special statute, and the charters of corporations existing under general statutes passed since that amendment can be amended by general statute only.

2. The plaintiff company, having been organized under ch. 144 of 1872, took nothing under ch. 126 of 1873, which attempted to enlarge its powers by special grant; and the invalidity of such enlargement is not affected by the consideration that it was made to secure a public benefit, by employing an existing corporation to improve the navigation of a river, and providing compensation therefor.

3. Ch. 399 of 1876, amending ch. 144 of 1872, authorizes any corporation of a certain character, being owner of both shores of a navigable river of this state, to improve such river by clearing and straightening the channels, closing sloughs, etc., provided that such works shall not materially obstruct navigation. *Held*, that the act legalized, as against the state, works of the kind authorized by it, *previously* erected by such a corporation.

4. *It seems* that, under said ch. 399, where the owners of a slough across

a bend in a navigable river, so improve the slough as to materially straighten the river, and make the slough the main channel, so dedicating it to the public use, they may treat the disused bend as a slough, though it was previously the main channel.

5. The grant of a franchise (as to maintain a boom in a river, within certain limits) cannot license a trespass by the grantee on lands of other persons.

6. The purchaser of a trespasser's possession takes no right which the trespasser had not.

7. The franchise to maintain a boom in a navigable river within certain limits does not pass by a mortgage, by the grantee of the franchise, of land within those limits to which he had no title.

8. Riparian owners on the banks of streams in this state which are navigable for the purpose of floating logs to market, may lawfully, until prohibited by statute, construct in front of their land proper booms to aid in floating logs, so as not to violate any public law or obstruct the navigation of the river by any method in which it may be used, or infringe upon the rights of other riparian owners.

9. Riparian owners lawfully in possession of piers and booms upon a navigable stream, may enjoin any obstruction of the river below which will interfere with the beneficial use of their property; but cannot absolutely restrain lower riparian owners from maintaining booms in front of their own land.

10. Where an order is reversed for the purpose of modification, it must be considered in force until the modification is actually made.

APPEAL from the Circuit Court for *Columbia* County.

Action to restrain defendants from erecting or maintaining a boom in and across the Wisconsin river between sec. 32, T. 24 N., R. 8 E., and the north line of T. 24, R. 7 E., in Portage county. The complaint alleges, among other things, that the plaintiff corporation was organized under ch. 73, R. S. 1858; that afterwards, by ch. 126 of 1873, entitled "An act to authorize the *Stevens Point Boom Company* to maintain piers and booms in the Wisconsin river," plaintiff was authorized to construct and maintain a system of piers and booms along and across said river, for booming and storing logs, etc., between the two points above described, at points indicated in the company's articles of association then on file in the office of the secretary of this state; that, by said last mentioned act, plaintiff was also authorized to acquire the title

to lands upon and contiguous to said river, within the limits of its proposed line of piers and booms, either by purchase, lease or license, upon which to erect and maintain such piers, booms, etc.; that the Wisconsin river is a navigable stream; that immediately after the passage of said ch. 126, plaintiff commenced to construct the piers and booms contemplated in said act and in plaintiff's articles of association, and acquired, by purchase, lease or otherwise, the necessary lands, contiguous to said river, upon which to erect such piers, etc., and prosecuted the work of constructing said piers and booms with diligence, until it had completed ready for use a substantial boom for storing logs, etc., together with the necessary side, catch and dividing booms, and all the facilities and conveniences for the safe storing and rapid handling of the logs, etc., coming into said boom; that, to insure the safety of the forest products stored in said booms, a large number of piers of great size and strength were built by plaintiff, to which said booms were and are attached, and said boom is of sufficient strength to hold in safety all the logs coming into it, up to its full capacity; that said booms and piers are wholly within the limits described in the articles of association, and in said ch. 126; that, before swinging said boom across the main channel of said river, a free and easy passageway for boats, rafts, barges, logs and timber past said boom, of at least eighty feet in width, was provided by plaintiff, through and by the Bessie Slough, and plaintiff has ever since maintained the same, so that its piers and booms have never been an obstruction to the navigation of the river; that plaintiff has expended in the erection of said piers and booms, and in the construction and maintenance of said passageway for rafts, etc., a large sum of money, to wit, $35,000; and that said boom has at all times since it was opened to the public in the spring of 1873, been kept in proper condition to receive and hold all the saw-logs, etc., coming into it, and plaintiff has at all times since its construction been ready and willing to receive, store and handle

all said logs, etc., as the owners thereof were desirous of running into it. After some further allegations, designed to show the importance of said boom to the lumbering interests upon said river, and to the city of Stevens Point, the seat of a large lumber manufacturing interest, near which said boom is situate, the complaint alleges that plaintiff has been in the peaceful and uninterrupted enjoyment of said piers and booms, and of the franchise created by said ch. 126, without hindrance or objection from any person, until about the time when this action was commenced; that the defendants, however, contriving and intending to deprive plaintiff of the rights conferred by said act, and to render valueless its booms and piers, threaten to construct, or have already constructed, upon and across said river within the limits above described, a boom for catching, holding and storing saw-logs, etc., floating down said river; that said boom of defendants is located, or intended to be located, near to and below plaintiff's boom, and, if allowed to remain there, will seriously damage plaintiff, and hinder and embarrass it in handling and delivering logs out of its said boom, for reasons which are stated at some length; and that the legislature of this state has never authorized defendants, or either of them, to build and maintain piers or booms in said river, at or near the place described, but said location is wholly without authority of law, and in fraud of plaintiff's rights, and will occasion it irreparable injury. It is then alleged that defendants claim a right to build and maintain a boom as above described, under a charter granted to Abraham Brawley and his associates by the legislature of this state in 1859, which authorized said Brawley, etc., to build and maintain a boom across said river between sec. 30, T. 24, R. 8 E., and sec. 25, T. 24, R. 7 E.; and various allegations are made whose general purport is, that all rights under the grant to Brawley were lost by nonuser before the passage of ch. 126 of 1873, and that, if otherwise, all such rights had become vested in the plaintiff, and not in the defendants.

Upon the complaint and certain affidavits annexed thereto, the circuit court made an injunctional order restraining the defendants, their agents, etc., from constructing or maintaining a boom upon and across the Wisconsin river, between the points described in the complaint.

The answer, after denying all knowledge or information as to plaintiff's corporate character, alleges that, in 1853, one Hawes purchased from the United States lots 2 and 3 in sec. 30, T. 24, R. 8 E.; that in 1855 and 1856, one Abram Brawley went upon the land under color or claim of purchase, and erected thereon a saw-mill, and, for use in connection with and as an appurtenant to said saw-mill, built in the Wisconsin river, which flows along and across said lots, piers for booming and storing logs, etc., to be manufactured at said mill, which piers were built along the shore of said lots within the thread of the stream, and not disturbing the navigation of the Wisconsin river, which defendants admit to be a navigable stream for the floating of logs and lumber; that afterwards, by an act published as ch. 149, P. & L. Laws of this state for 1859, the legislature conferred upon Brawley, in addition to his rights as riparian owner already existing, authority to maintain a boom between sec. 30, T. 24, R. 8 E., and sec. 25, T. 24, R. 7 E., and to collect charges for logs and lumber stored therein, etc.; that the point designated for said boom was along and across said river, abreast of said lots 2 and 3, and the piers kept and maintained for the same were the piers constructed as aforesaid, and said grant (as defendants are informed and believe) was an enlargement of the riparian rights of the owner and possessor of said lots, as an appurtenant thereto, and the same was used and enjoyed until said mill was destroyed by fire in 1859; and that the title of said Hawes, and the title and equities of said Brawley, by mesne conveyances, etc., were in the defendants. For a further answer it is alleged, that, some time in 1873 and 1874, at or near the site of the original mill so built by Brawley upon the premises,

and in connection with the piers originally constructed as aforesaid, a new mill was erected for the manufacture of lumber, and is now owned and maintained by defendants, at a large expense; that, in order to fully use and enjoy their rights as mill owners and riparian owners, defendants have commenced and intend to repair and maintain said piers adjacent to the shore of said lots 2 and 3, and to use a boom in connection therewith, attaching it temporarily to the opposite shore from time to time, if necessary, and if a license therefor can be obtained from the riparian owner on said opposite shore; that such boom can be so thrown and used as not in any wise to obstruct the free navigation of the river for all purposes for which it may be required; that defendants intend to use the same for the purpose of storing only such logs, etc., as they may provide to stock the mill so owned and maintained by them; and that they do not intend to, and will not, interfere with, impair or obstruct navigation, or injure or interfere with any vested right of the plaintiff, or of any person whatever. The answer also denies the validity of ch. 126 of 1873.

Upon the pleadings and certain affidavits and copies of records, defendants moved to vacate the injunctional order; and from an order denying this motion they appealed.

Briefs were filed by *Edward S. Bragg* and *S. U. Pinney* for the appellants, and by *G. W. Cate* for the respondent; and there was oral argument by *Mr. Pinney* and *Mr. Cate.*

RYAN, C. J. It is stated in the complaint that the respondent was organized under ch. 73, R. S. This was clearly a mistake; for the articles of association, produced during the argument, are dated 30th December, 1872, and were filed in the secretary's office 8th January, 1873. The organization must therefore have been under ch. 144 of 1872, which expressly repeals ch. 73, R. S. And it was accordingly so stipulated by counsel on the argument.

The court adheres to the construction given to the constitutional amendment of 1871 in *Attorney General v. Railroad Companies*, 35 Wis., 425, and in *Kimball v. Rosendale*, 42 id., 407. That construction was too deliberately and solemnly determined to be open to review. A special preëxisting charter may still be amended by special statute; but no corporation, except cities, can be created by special statute, but under general statutes only; and the charters of corporations existing under general statutes passed since the amendment can be amended by general statute only.

The respondent therefore took nothing under ch. 126 of 1873. That statute is, beyond question, a legislative attempt to amend the respondent's charter under the general statute, enlarging its powers by special grant. It unquestionably grants corporate powers and privileges; corporate franchises, not before possessed by the corporation. *Sellers v. Lumbering Co.*, 39 Wis., 525.

The court was not indisposed, if it could, to construe the sections of the latter statute relied on, as an employment of an existing corporation to improve the navigation of the river in the public right, and to provide a compensation for it. But the argument of the learned counsel for the appellant appears to be conclusive against such a view. His position was, that corporate franchises are always supposed to be granted on some public consideration, with corresponding benefit to the grantees; and that to hold the sections in question a valid grant of power on the ground suggested, would open the door indefinitely to special grants to corporations under general laws, so far nullifying the constitutional amendment, and continuing the evils which the amendment was intended to obviate, as stated in *Kimball v. Rosendale*. And so the court holds in this case.

On the argument, ch. 399 of 1876 appears to have been overlooked. That is an amendment of ch. 144 of 1872, relating to corporations created for driving, sorting and delivering logs

on the rivers of the state, and for the improvement of such rivers for that purpose. It authorizes such corporations, being owners of both shores, to improve such rivers by clearing and straightening the channels, closing sloughs, erecting sluiceways, etc.; provided that such works shall not materially obstruct navigation. Except in one particular, the exclusive right of maintaining works on the river within limits beyond its own rights of property, this statute appears substantially to replace, for all the questions now before the court, the attempted amendment of the respondent's charter in 1873.

It is true that the works of the respondent were begun, and probably completed, before the passage of the statute of 1876. But the statute must have the effect of a confirmation of acts authorized by it, giving them legal right, as against the state, from the date of its passage. What the statute authorized to be done after its passage, it legalized from thenceforth, as against the state, when done before. It is sufficient here that the respondent's works, so far as authorized by the statute, and so far as the state had power to authorize them, had become legal before the commencement of this suit.

In rivers like the Wisconsin it may not be always easy to determine which is the main channel and which is the slough. And indeed the natural action of the waters of the river may, from time to time, alter the character of its channels; making what was before a slough, the main channel, and what was before the main channel, a slough. And it does not appear to be a strained construction of the grant of ch. 399 of 1876, to hold that when the owners of a slough, across a bend in the river, so improve the slough as materially to straighten the river and to become its main channel, so dedicating it to public use, they may treat the disused bend as a slough, although, before the improvement, it may have been the main channel. With all the light now before it, the court so holds in this case for the purposes of this motion.

So far, therefore, as the motion papers disclose, the respond-

ent must be held to be lawfully in possession of the slough and the works which it has constructed upon it. It therefore has a right to enjoin any obstruction of the river below, which will interfere with the beneficial use of its property above.

But the injunction goes further. It enjoins the appellants from constructing any boom at a point below, absolutely and without any qualification. And this brings the court to the case of the appellants.

They show that they are in possession as riparian owners, under color of title, on one bank of the river, below the respondent, where they propose to construct their boom. And, for the purposes of this appeal, the court will regard them as such riparian owners, with title to the thread of the stream.

Their title is impeached, as it is understood, in one particular only. It appears that in the year 1859, one Brawley, without apparent title, was in possession of the land claimed by the appellants. In that year he received from the legislature a charter or license to maintain a boom in the river within limits including that point. Ch. 149, P. & L. Laws of 1859. It further appears that he actually constructed some works at that point, long since disused and fallen into decay. Both parties appear to claim Brawley's franchise. The court is not satisfied that either claim is sustained.

Of course, the legislature could grant the franchise or license as against the public only. It could not license a trespass by its grantee upon land to which he had no title. The franchise granted to Brawley presupposed some title in him within the limits designated, and he took the right to use it only where he had title. As against the owner of the land, his user appears to have been a mere trespass.

The respondent claims under a sale of Brawley's works, upon execution on a judgment against him. It is sufficient to say that whatever Brawley did was subject to the right of the actual riparian owner, with title extending *usque ad filum aquæ.* And no sale of Brawley's works, by him or as against him, could

affect the title to the land upon the bank of the river, extending to its thread. The purchaser of a trespasser's possession takes no right which the trespasser had not.

The appellants claim under foreclosure of a mortgage given by Brawley, of land which they now appear to own. It must be taken, to give any right to the appellants, that they hold under a better title than Brawley could give. The works which he constructed were appurtenant to the fee, and went with it. If the appellants have acquired the fee under the water, they have acquired Brawley's works. But if his charter, so long unused, retain any validity, the franchise appears to be still in him to construct a boom within the designated limits wherever he may have title. His franchise to maintain a boom within those limits could not pass by a mortgage of a piece of land within them, to which he had no title. And the right in Brawley's charter, claimed by the appellants, is not supported by his trespass on premises which the court presumes them to own by a better title than they could derive from Brawley.

The Brawley charter is therefore not here considered as aiding either party.

"Distinguished from appropriation and occupation of the soil under the water, a riparian owner upon navigable water, whether or not he owns the soil *usque ad medium filum aquæ*, and unless prohibited by local law, has a right to construct, in shoal water, in front of his land, proper wharves or piers in aid of navigation, and, at his peril of obstructing navigation, through the water far enough to reach actually navigable water; this being held to further the public use of the water, to which the public title under the water is subordinate; and therefore to be, in the absence of prohibition, passively licensed by the public, and not a pourpresture." *Diedrich v. Railway Co.*, 42 Wis., 248.

This was said of waters generally navigable by all methods. This court has, however, uniformly held streams of sufficient

capacity to float logs to market to be so far navigable. *Whisler v. Wilkinson*, 22 Wis., 572; *Sellers v. Lumbering Co.*, 39 id., 525; *Olson v. Merrill*, 42 id., 203. In such streams, proper booms and like works to aid in floating logs to market serve the like purpose, and stand for and in the same right, and subject to like limitations, as the piers and wharves on waters generally navigable, spoken of in *Diedrich v. Railway Co.*

Such being the riparian right of the appellants, they may lawfully, until prohibited by statute, construct, in front of their land, proper booms to aid in floating logs, so as not to violate any public law or obstruct the navigation of the river by any method in which it may be used, or infringe upon the rights of other riparian owners. Although this right appertains properly to their riparian title and not to their title to the soil under the water, yet, in view of the riparian rights appertaining to the opposite bank, it is presumably limited by the thread of the stream. In any case, it must not obstruct the free navigation of the river by floating logs to market or otherwise.

Subject to these conditions, the appellants appear to have a right, as riparian owners, to construct a proper boom from their own premises on the bank of the river.

It is always dangerous, in deciding preliminary motions, to pass upon the rights of the parties absolutely. In the present case, the record is far from satisfactory in disclosing the rights of the parties. It was so regarded in the court below, and apparently with great justice. And what is here said of the rights of the parties is based on what here appears, and is intended to apply to this appeal only. If either party, on the hearing, is able to establish a broader title in itself, or broader limitations to the the title of the other, it ought not to be precluded by anything now decided.

But it follows from what has been said, that the injunctional order was too broad, and that the order sustaining it

must be reversed, with directions to the court below to modify it according to the views here declared.

This appears to be a proper occasion to declare that when an order is reversed for the purpose of modification, the order must be considered in force until the modification be actually made in the court below.

*By the Court.*— The order is reversed, and the cause remanded to the court below with directions to modify the injunctional order to conform with this opinion.