GEORGE GREEN *vs*. KNIFE FALLS BOOM CORPORATION.

April 16, 1886.

Constitution—Special Act granting New Franchises to Existing Corporation.—The provisions of Sp. Laws 1872, *c*. 106, considered, and *held* constitutional; following *Ames* v. *Lake Superior & Mississippi R. Co.*, 21 Minn. 241.

Plaintiff brought this action in the district court for St. Louis county, to recover possession of certain logs alleged to be wrongfully detained by the defendant.    The answer admits the detention of the logs by the defendant, and justifies such detention under claim of a lien for boomage in accordance with the provisions of Sp. Laws 1872, *c*. 106.    On plaintiff's motion judgment on the pleadings was directed by *Stearns*, J., on the ground that Sp. Laws 1872, *c*. 106, is unconstitutional.    Defendant appeals from the judgment.

The cause was argued at the April term, and by order of the court was reargued at the October term, 1885.

*Warner, Stevens & Lawrence*, for appellant.

*William W. Billson*, for respondent.

VANDERBURGH, J.   The defendant, it appears, first organized as a boom corporation under the general law.    The original articles of incorporation are not disclosed by the record, but it is manifest (and it is not disputed) that the organization must have been made under Gen. St. *c*. 34, tit. 2, and that the powers and privileges thereby acquired could not include either the right to exercise the power of eminent domain, or to take tolls, or to obstruct the navigable portion of the St. Louis river, where the defendant's booms and works are located, so as to prevent the free passage of the logs of other owners. *Stevens Point Boom Co.* v. *Reilly*, 44 Wis. 295, 305; S. C. 46 Wis. 237, 242.   It was, by virtue of its original articles of incorporation,

entitled only to the same rights in the river as other riparian owners, and to erect and maintain booms in connection with the navigation of the stream, for its own use, and the use of others who might contract for its services. It was merely a private boom corporation. Soon after such organization under the general laws, the legislature passed an act entitled "An act relating to the Knife Falls Boom Corporation," (Sp. Laws 1872, c. 106,) which purports to confer new and independent franchises and enlarged powers upon the defendant corporation, within the St. Louis river, and over the navigation and use thereof, as respects the passage of logs, including the right of eminent domain, the right to charge compensation for boomage, in the nature of tolls, prescribed by the act, upon all logs passing through their works, and to receive and take the entire charge and control of all logs and timber which might run, come or be driven within the same, and to boom, scale, and deliver them as provided in such act. *Osborne* v. *Knife Falls Boom Co.*, 32 Minn. 412, (21 N. W. Rep. 704.) And the corporation is also thereby granted a lien upon all such logs or timber for their compensation, which may be enforced by a sale.

The detention of the plaintiff's logs, taken and held *in invitum* by defendant under a claim of lien for the boomage allowed by this act, brings up the question of its constitutionality in this case. This question was not suggested or mooted in the case of Osborne against the defendants, just cited, but the question there determined was as respects the power of the legislature to authorize such improvements in and use of a navigable river. The question which is raised here, and which has been elaborately argued by counsel, is the constitutional power of the legislature to so amend the charter, and to confer upon an existing corporation additional special powers and privileges of the character described, under the provisions of article 10, section 2, of the constitution, forbidding the formation of corporations by special acts. The discussion by counsel at the bar embraced the question of the proper original construction of this clause, and the intention of the framers of the constitution in inserting it, and also the question of the construction thereof which has in fact prevailed and been acted on in this state, and the effect which the court ought to give to such construction in considering this case.

1. The charter of a corporation represents a twofold contract: (*a*) The executed grant by the state of a portion of its sovereignty, irrevocable in its nature, when once accepted and acted on; (*b*) the mutual compact between the corporators or stockholders among themselves. And, in the absence of constitutional restraints, a corporation might be endowed with new and enlarged powers by legislative grant, and its original character, object, and business might thereby be changed, with the consent of the stockholders, for any lawful purpose. If the clause under consideration was intended simply to prohibit special acts establishing corporate entities or granting original charters, then it is clear that an existing corporation may receive the grant of new and extensive privileges and franchises, and the amendment to the defendant's charter by the act in question may undoubtedly be upheld as a valid exercise of legislative power. But the respondent contends that this provision of the constitution has a wider significance, and was intended to restrain all grants of corporate privileges and franchises by special acts of the legislature; and this is, in the opinion of the writer, the proper construction. A corporation, created or formed by special acts, could only be so formed by means of the grant of a charter conferring essential corporate powers or franchises. "Franchises" are defined to be special privileges conferred by government upon individuals, and which do not belong to the citizens of the country, generally, of common right. *Bank of Augusta* v. *Earle*, 13 Pet. 519. The grant of such a franchise is the essential thing in a charter, and whether given to new corporators, or those already organized, or in an original or amended charter, the grant of a corporate franchise is, as between the sovereign and the corporators, so far the grant of a charter, or the grant of a "franchise by act of incorporation." *Attorney General* v. *Railroad Cos.*, 35 Wis. 425, 560. Such grants, I think, it was clearly the purpose of the framers of the constitution to prohibit by special acts.

It is true, the right to be a corporation is itself a franchise, but all franchises granted to a corporation become corporate franchises, and essential portions of its charter or act of incorporation, and the chief value of the charter, in order to accomplish the purposes of the corporate organization. The constitutional provision requires that cor-

porations, except for municipal purposes, shall be formed under general laws, and not under or by special acts.   This cannot, I think, mean that a portion of the franchises or privileges in a proposed charter might be obtained under a general law, and the remainder by special enactments; or, in other words, that a general law might be a mere enabling act to confer corporate existence, leaving the door open to the corporation thereafter to apply to the legislature for additional franchises.   Such construction must be given to the provision in question as will manifestly be in harmony with its spirit, and give effect to the intent and purpose of its framers.   The object being to restrict the granting of charters to general laws, the courts cannot sanction an evasion by limiting the application of the principle to the case of original charters or corporate organizations.   The object of this constitutional restriction was, as it is well understood, to correct an existing evil, and prevent favoritism and abuses in securing grants of special charters, and to establish uniform rules for the endowment of corporations with chartered privileges.   Any special legislation affecting the charters of corporations should therefore be strictly construed, so as to give full effect to the leading object of the provision.   1 Dill. Mun. Corp. § 17; *Atkinson* v. *Marietta, etc., R. Co.*, 15 Ohio St. 21, 35.

Charters, then, since the adoption of the constitution, are to be acquired under general laws; and to them must we look to ascertain what franchises may be conferred by charter upon corporations. Every new grant of special powers must, as between the sovereign and a corporation, be regarded, as respects the exercise of such powers, in the light of a new charter, and especially since, when accepted, the new or amended charter becomes a contract irrevocable, unless the power of amendment or repeal is reserved in the grant.   Every new grant of a portion of its sovereignty by the state through the legislature must, in principle, be within the prohibition, and be equivalent to the grant of a charter *de novo.*   In accordance with this view, the legislature accordingly, upon the adoption of the constitution, enacted general laws for the formation of corporations for the various purposes required in the commonwealth, and carefully defined their powers and obligations, and made them of uniform application.   These

general provisions have been amended from time to time, as the public needs have required, and general laws have been passed applicable alike to corporations of the same kind, and proper provisions made for amended articles of incorporation. The general provisions of law applicable to any class of corporations, together with the articles of association, constitute the charter of any particular corporation. The general character of this legislation is entirely in harmony with the construction that corporations under general laws must derive their essential powers therefrom. We lay no stress upon the use of the word "formed" instead of "create," in the constitution; the distinction is immaterial in respect to the matter of the grants of corporate franchises. The supreme court of Wisconsin, upon a careful consideration of the question, while determining that the charters of pre-existing corporations were subject to alteration or amendment under the power expressly reserved in the constitution of that state, hold that there is no distinction, as respects the constitutional inhibition, between a grant of corporate powers and privileges and the grant of corporate charters *de novo. Attorney General* v. *Railroad Cos.,* 35 Wis. 425, 560; *Kimball* v. *Town of Rosendale,* 42 Wis. 407, 416; *Stevens Point Boom Co.* v. *Reilly,* 44 Wis. 295, 301. And the same doctrine is also affirmed in *San Francisco* v. *Spring Valley Water Works,* 48 Cal. 493, 507; *Spring Valley Water Works* v. *Bryant,* 52 Cal. 132, 140.

2. The defendant also makes the point that it was competent for the state to invest a corporation, as it might an individual, with the power and duty to assume an agency in behalf of the public to make the improvements and transact the business authorized by the amendment to the charter here in question, for the purpose of facilitating the business of driving, handling, and assorting logs in the common interest. But the nature of the agency and business thereby created and authorized does not affect the application of the rule. The precise point was raised in *Stevens Point Boom Co.* v. *Reilly,* 44 Wis. 295, 301, where the plaintiff was organized under a general law, and subsequently granted powers similar to those conferred on this plaintiff by the act in controversy; and the court, by Ryan, C. J., say: "The court was not indisposed, if it could, to construe the sections of

the latter statute relied on as an employment of an existing corporation to improve the navigation of the river in the public right, and to provide a compensation for it; but the argument of the learned counsel for the appellant appears to be conclusive against such a view. His position was that corporate franchises are always supposed to be granted on some public consideration, with corresponding benefit to the grantees; and that to hold the sections in question a valid grant of power on the ground suggested would open the door indefinitely to special grants to corporations under general laws, so far nullifying the constitutional amendment, and continuing the evils which the amendment was intended to obviate." Such powers, when conferred upon a corporation, become corporate powers or franchises, and hence subject to the same objection as in other cases where a franchise which may lawfully be conferred upon an individual by special act cannot be so conferred upon a corporation. *Ames* v. *Lake Superior & Mississippi R. Co.*, 21 Minn. 241, 258.

3. It is unnecessary to consider whether there is any distinction between corporations formed under general laws and corporations created by special charters prior to the adoption of the constitution, as respects the effect of subsequent special legislation. It has been the habit of the legislature in both classes of cases, and especially in the latter class, to amend and alter charters by special acts, ever since the constitution was adopted; but I have not been able to discover that there are many other instances like the case at bar, wherein such new and important grants of power have been made to pre-existing corporations. The legislation in such cases is more generally, as I understand it, confined to amendments and alterations relating to matter of form, or affecting the remedy, or the method and details of the management of the corporate business, or the mutual relations, rights, or interests of the corporators among themselves, in the exercise of franchises already possessed by them which legislation might be had, with the consent of the corporators, without any new or further grant of corporate powers by the state. This court, in the several cases which have been before it for adjudication, has always recognized the restrictive force of the constitution as respects such grants, though it has never attempted to define the

exact limits of such legislation, or to formulate any rule on the subject; and while some of the cases have recognized and sustained departures from the strict rule we have attempted to lay down, none of them, I think, lend any sanction to so wide a departure therefrom as would be necessary to sustain the grant of the special charter in this case.    But no case seems to have gone farther in upholding a grant of new powers than the limits suggested in *Ames* v. *Lake Superior & Miss. R. Co.*, 21 Minn. 241, 286, where the court, while not assuming to accurately define the limits of the constitutional restriction, indicate very clearly that a law authorizing such additions or changes in the business of a corporation as to constitute substantially a new enterprise, to which its old business would be a mere incident, would be unconstitutional; and the legislature has not generally transcended such limits in amendments made to corporate charters.    In exceptional cases, like the one under consideration, the corporators should be deemed to have accepted and acted under the charter amendments assumed to be granted, at their peril.

It would not, in my judgment, be a reasonable construction of this act to hold that the new business authorized was incidental to the original enterprise, or a mere extension or enlargement of it; nor do I think that public interests would be seriously affected by a construction that should defeat legislation of this kind.    I think that the difficulties and inconvenience likely to result could, in a great measure, be remedied through the operation of general laws, as was the case in *Stevens Point Boom Co.* v. *Reilly, supra.*    And see *People* v. *Perrin*, 56 Cal. 345.    In *San Francisco* v. *Spring Valley Water Works*, 48 Cal. 493, 523, the court, in the face of similar arguments and considerations, reversed what was held to be an erroneous construction of a similar clause in a state constitution, in an earlier case, decided eleven years before, (and which upheld legislative grants of new franchises,) and adopted the strict rule contended for by the respondent here.

4. The majority of the court, however, do not agree to the views above expressed in respect to the character of the special law in question, and the effect to be given to it, and are of the opinion that it ought not to be held unconstitutional.    They hold that the strict rule

v.35m—11

forbidding the grant of additional powers or franchises, while it may be the more logical and satisfactory, treated as an original question, has never in fact been recognized or adopted by the legislature or courts of the state; that this constitutional provision was open to construction, and, during a long course of legislation, the practical construction placed upon it by the legislature and people has been a liberal one in respect to amendments, and that the court should be very slow to change it, at this late day, for the reason that the extensive and varied legislation affecting corporate charters, so long continued, has come to involve very large public and private interests. Considering the amount and character of such legislation, and in view of the decisions of this court, it would often be difficult to accurately define the boundary line between valid and void acts, leaving many cases in doubt and uncertainty until actually adjudicated.

Under these circumstances, the constitutional amendment of 1881 was adopted, (Laws 1881, c. 3,) which, in direct and plain terms, forbids special legislation of the character complained of. The language of this amendment is: "The legislature is prohibited from enacting any special or private laws in the following cases: * * * (7) For granting corporate powers or privileges, except to cities." This amendment, in their opinion, indicates a change of policy, and unquestionably inaugurates or restores the strict rule of construction as to all subsequent legislation affecting the charters of existing corporations. Its language and meaning are too clear to call for construction, and there will be no ground upon which to build any subsequent erroneous legislation or popular construction.

My brethren are also of the opinion that the act in question does not, within the rule laid down in *Ames* v. *Lake Superior & Miss. R. Co.*, *supra*, work such a change in the character of the corporation as to constitute it essentially a new or different corporation, though it enlarges its business, and grants the necessary incidental powers to make such enlargement practical and effective; and that, for these reasons, the act should not be held void.

Judgment reversed.