SHOWALTER, Circuit Judge.
This is a motion for a preliminary injunction. Complainant, a New York corporation, is mortgagee to the extent of some $3,000,000 in bonds of all' the property of defendant the Citizens’ Street-Railroad Company, an Indiana corporation, operating a railroad in the streets of defendant the city of Indianapolis. Defendant Wiltsie is the prosecuting attorney for that district of Indiana which includes the city of Indianapolis. Defendant railroad company was organized under the general incorporation law of Indiana first enacted in 1861, and entitled “An act to provide for the incorporation of street railroad companies.” It succeeded by purchase to the railroad property and rights in the streets of Indianapolis acquired pursuant to certain ordinances of that city of a former company organized under the same act for the purpose of constructing, operating, owning, and maintaining a railway in certain streets of Indianapolis. Section 9 of the general incorporation law above mentioned is in the words following:
“The directors of such company shall have power to make by-laws for the management and disposition of stock, property and business affairs of such company not inconsistent with the laws of this state; to prescribe the duties of officers, artificers and servants that may be employed; for the appointment of all officers for carrying on all business within the objects and purposes of such company; and for regulating the running time, fare, etc., of such road or roads.”
Section 11 of the same law is as follows:
“This act may be amended or repealed at the discretion of the legislature.”
By agreement with the city of Indianapolis pursuant to certain ordinances in that behalf, accepted by defendant railroad company, the rate of fare to be charged could be five cents for each passenger, and such was the rate at the time this bill was filed. In March, 1897, *220 the legislature of Indiana passed an act entitled and worded as follows :
“An act to amend section nine of an act entitled ‘An act to provide for the incorporation of street railroad companies,’ approved June 4, 1861, the same being section 4151 of the Revised Statutes of 1881, and adding supplemental sections thereto regulating the fare to be charged and collected by any street railroad company organized under the provisions of said act in any city having a population of 100,000 or more, according to the United States census of 1890, and making it a misdemeanor to demand, charge, receive, or collect from any passenger upon the same a cash fare of more than three cents, providing for the transfer of passengers from any line to another, and for the issuance of transfer tickets or passes, and authorizing such company to make reasonable regulations for the transfer of such passengers.
“(Approved March 6, 1897.)
“Section 1. Be it enacted by the general assembly of the state of Indiana, that section nine of an act entitled ‘An act to provide for the incorporation of street railroad companies,’ approved June 4, 1861, the same being section 4151 of the Revised Statutes of 1881, be and the same is hereby amended so as to read as follows:
“Section 9. The directors of such company shall have power to make bylaws for the management and disposition of stock, property and business affairs of such company not inconsistent with the laws of this state, and prescribing the duties of officers, artificers and servants that may be employed, and for the appointment of all officers for the carrying on all business within the objects and purposes of such company and for regulating the running time, fare, etc., of said road or roads: provided, however, that in cities in this state having a population of 100,000 or more, according to the United States census of 1890, the cash fare shall not exceed three cents for any one trip or passage upon the street railroad or roads of the same, and every passenger upon such road or roads shall, upon his or her request or demand, without any further cash fare or charge, be transferred from the line upon which he may take passage to and upon any other line or lines in such city owned, controlled or operated by such company to which he paid his cash fare, and such company, its officers, servants, agents or employés shall, upon the request or demand of any passenger, give a transfer ticket or pass to such passenger entitling him to passage upon the line or lines to which he desires to be transferred, so that he may have one continuous trip or passage over and upon any two of its lines, without any additional cash fare or charge to the point nearest his destination: Be it further provided, however, that such directors may provide reasonable regulations for the transfer of such passengers as to place where such transfers shall be made and when such transfer tickets shall expire, but every passenger desiring to be so transferred shall be given a reasonable opportunity to do so and to be carried upon the line to which he desires to be transferred. And should any street railroad cbmpany in any such city charge, receive or collect more than three cents cash fare, or refuse or neglect to transfer passengers as herein provided, then said company shall forfeit and pay to the person from whom it receives, charges or collects the said cash fare in excess of three cents, or whom such company refuses to transfer as herein provided, the sum of one hundred dollars, to be recovered in a civil action in any court of competent jurisdiction; and the city in w-hich such railroad company is doing business, running and operating its line or lines of road or roads may, upon the failure of such street railroad company to comply with any of the provisions of this act, declare the rights, terms, contracts and franchises of such company to use and occupancy of the streets, alleys, and highways of such city for street railroad purposes forfeited and at an end and may proceed to oust such company from the use and occupancy of such streets, alleys and highways, and may contract and let to any other street railroad company the use and occupancy of such streets, alleys and highways for street railroad purposes, the same to be granted and let in accordance with the provisions of this act and the laws governing cities having a population of 100,000 or more, according to the United States census of 1890.
*221 “Sec. 2. That it shall be unlawful for any company organized under the provisions of this act and owning, controlling, running or operating any street railroad or system of street railroads in any city having a population of 100,000 •or more, according to the United States census of 1890, or any officer, agent, servant or employe of such company to demand, charge, receive or collect from any passenger upon its road or system of roads a cash fare of more than three cents for any one trip or passage upon the same, and for any violation of the provisions of this section, such company, officer, agent or employe, shall, upon conviction thereof, be fined in any sum not less than fifty dollars and not 'more than five hundred dollars.
“Sec. 3. That it shall be unlawful for any company organized under the provisions of this act, and owning, controlling, running or operating any street railroad system or street railroad in any city having a population of 100,000 or more, according to the United States census of 1890, or any officer, agent, servant or employé of such company, to refuse or neglect to transfer any passenger upon the same, after he shall have paid his fare, from any of its line or lines upon which he may have become a passenger to any other of the lines of such company owned, controlled, run or operated by it in such city and to which he may have requested or demanded to be transferred; or neglect or refuse to give to any passenger after he shall have paid his fare, upon demand or request, a transfer or pass ticket, entitling such passenger to be transferred or carried upon any other of its lines in such city to the point of his destination thereon, or who shall neglect or refuse to receive and carry any passenger after he shall have received a transfer or pass entitling him to be transferred and carried by and upon some line or lines other than that upon which he originally took passage, shall, upon conviction thereof, be fined in any sum not less than fifty dollars and not more than five hundred dollars.”
The theory of the bill is that the enactment last above set forth is not within the reservation expressed in section 11 of the act of 1861; that the act of 1861 as amended and in force prior and up to March, 1897, being the general law of the state for the incorporation of street railroads, is the charter of the defendant railroad corporation; that said charter cannot, under the constitution of Indiana, be amended by any enactment which is special to any particular street-railroad corporation or to any particular community or locality in Indiana; that the amendment of 1897 is confined in its operation to the city of Indianapolis and to the defendant railroad corporation and to other street-railroad corporations now or hereafter organized for carrying passengers over the streets of that city; that, if the scheme, as proposed in said amendment, be carried into effect, complainant, which is mortgagee of the railroad property of defendant corporation in Indianapolis to the extent of some $3;000,000 of outstanding bonds, will be irremediably injured in its security; that by the amendment of 1897 the state of Indiana would violate its engagement to the defendant railroad company as expressed in the general law for the incorporation of street-railroad companies; and this in contravention of the national constitution, which declares that no state shall pass any “law impairing the obligation of contracts.” On this latter ground, as well as by reason of the nonresidence of complainant, the controversy, it is said, falls within the judicial power of the United States.
Section 22 of article 4 of the constitution of Indiana provides that, except in reference to certain stated matters, “the general assembly shall not páss local or special laws.” Section 23 of the same article is: “In all cases enumerated in the preceding section, and in all other cases where a general law can be made ap *222 plicable, all laws shall be general and of uniform operation throughout the state.” By section 13 of article 11 of the constitution of Indiana it is declared that “corporations other than banking shall not be created by special act, but may be formed under general laws.” There is obviously no discretion in the legislature of Indiana whereby that body might, as the basis of a special law for the formation of street-railroad corporations, declare that a law for that purpose which is “general and of uniform operation throughout the state,”—that is, which is applicable to like conditions whenever and wherever such conditions may exist in the state,—couldi not “be made applicable.” The question here is whether or not the-amendment of 1897 is a “general law,” within the sense of section 13 of article 11 of the constitution of Indiana. This amendment X»rovides “that in cities in this state having a population of 100,000 or more, according to the United States census of 1890, the cask fare shall not exceed three cents,” etc. There is but one city in Indiana which answers this description, namely, the city of Indianapolis. . USTo matter how many cities there might be now or may be hereafter in Indiana containing populations respectively of 100,-000 or more, the act in question could never apply to any other than the city of Indianapolis. The permanency of the law, and its application to conditions as they arise, and not merely its scope for the-time being, is to be considered in applying constitutional tests. The question here is the same as it would be if in fact there had been in Indiana at least two cities each containing 100,000 inhabitants;, and the act in question had been expressly limited in its operation to one, leaving the street-car service of the other and of the remaining cities of the state subject to the old law. Could it be said, on the hypothesis last made, that such a law touching the incorporation of street-railroad companies was general and of uniform-operation throughout the state? Under the amendment of 1897 the field is open to all persons to organize street-railroad companies, even in the one city identified in that amendment. But the generality and uniformity of operation under like conditions insisted on in the constitution as essential to a law for the formation of corporations must apply to the business for which corporate organization is granted, as well as to the bare privilege of becoming incorporated. A corporation is not formed until its functions or business, as well as the mere right to be a corporation-,, are identified under the law. To make a corporation, the legislature must declare not only that certain persons may be incorporated, but that in the corporate capacity they may do something, —carry on some specified business. A classification which is germane to the subject-matter, as I understand it, may be provided' in a law for the formation of corporations; but an arbitrary speoification of a single locality in a business which is not local, whereby one set of statutes would apply in one place and another to a like business in a different place, is not within the organic law of Indiana. What may be called “intramural passenger traffic” is not a business local to any one city in Indiana. A classification of street-railroad companies by reference to the matter of populous *223 ness in cities is suggested in the amendment of 1897. But the limitation by the one census—that of 1890—defeats the classification. The vice of the amendment is that it puts street-car service in one city under one set of conditions and sanctions, while the same, business in other cities of the state, no matter how populous they are or may become, must be carried on under another. In Mode v. Beasley, 143 Ind. 312, 42 N. E. 728 (decided in 1895), the supreme court of Indiana said:
“Nearly every legislature, if not every one, from that time [1868] to the present has been passing acts that were strictly local under titles and enacting clauses purporting to make them general in their operation throughout the state. A conspicuous example of this class of acts is what is generally known as the ‘Charter of Indianapolis,’ approved March 6, 1891. But the city of Indianapolis is not named in the act. Both the title and the body thereof purport to make the act general, and of uniform operation throughout the state, by providing ‘that all cities of this state which had a population of more than 100,000 inhabitants, as shown by the last preceding United States census, shall hereafter be governed by the provisions of this act.’ And then follows the balance of the first section and the other 134 sections of the act, all of which are expressly confined in their operation to the city of Indianapolis by the. part of section 1 above quoted, as if the city of Indianapolis had been named as the only place where said act was ever to have any operation or effect whatever. It is to be noted that the act is confined to cities which had a population of more than 100,000 inhabitants as shown by the last preceding United States census. This and all courts in the state judicially know, and the legislature knew, that the city of Indianapolis was the only city in the state at the passage of the act that the last census report showed had more than 100,000 inhabitants. ' And, no matter how many cities in the state might, by subsequent increase of population, exceed in number the 100,000 mark, still the act could not apply to them, because Indianapolis alone had a population of over 100,000 by the United States census at the time of passage of the act. Hence the legislative intent is made clear and undoubted that the act was designed never to have any effect or operation anywhere in the state outside of the city of Indianapolis, while it purports to be a general act. And yet no one can entertain a reasonable doubt of the constitutionality of the act, not because it purports to be general, but because it is on a subject on which the applicability of a general law has been left by the constitution to the exclusive judgment of the legislature on inquiry into the facts.”
By the last sentence above quoted the supreme court of Indiana apparently means that municipal corporations are not within the prohibition of section 13 of article 11. The language of that section, to quote it once more, is, “Corporations, other than banking, shall not be created by special act, but may be formed under general laws.” The specification “other than banking” indicates corporations for business purposes- and private gain as referred to. The conjunction of words, “municipal corporations other than banking,” would be meaningless. In Trust Co. v. Harless, 131 Ind. 452, 29 N. E. 1062, the supreme court ruled, in effect, that a law conferring additional powers on corporations engaged in supplying natural gas could not be special, but must be general and of uniform operation. That court has also ruled that the question whether or not “a general law can be made applicable” when it arises under section 23 of article 4, quoted above in this opinion, is conclusively determined by the legislature. The sense of these holdings, I take it, is that the question whether or not “a general law can be made applicable” never can arise when the subject-matter *224 of legislation is a law for the formation of corporations within section 13 of article 11. This latter section is itself an express declaration by the people of Indiana in their organic law that “corporations, other than banking, may be formed under general laws”; and there is no discretion on the subject, either in the legislature or the court. To hold that the legislature may—as under section 23 of article 4—declare that “corporations, other than banking,” .cannot “be formed under general laws,” would be to annul section 13 of article 11 of the constitution of Indiana. The members of the legislature themselves in the amendment of 1897 evidently did not deem it in their power to make a special law. 'By obvious inadvertence the attempted classification was wrongly worded. If it be the law of Indiana that the legislature has this power, then individual charters to individual corporations may once more be granted at pleasure by that body. But this is what section 13 of article 11 was meant more especially to prevent. The language •is that “corporations [in the plural] shall not be created by special act,” meaning, when read in the light of the antithesis shown in the remainder of the sentence, to prevent any special act, though any combination of persons to the statutory number might become incorporated thereunder. The inhibition i's not merely against individual charters to individual corporations, but against any act which is special as distinguished .from one which, with reference to the business to be done by corporate organization, is general, and of uniform operation, under like conditions throughout the state. The prevention of possible legislative discrimination or favoritism in business enterprises, and the permanency of property rights secured by the requirement of generality and uniformity in the law of corporate organization, was apparently the intent of the people of Indiana in making their constitution.
It is argued with much insistence that, as respects the legislative power to amend by special enactment, a distinction exists between an amendment which embodies the grant of a new and additional power to a corporation already extant and one which restricts a power previously given; and it is said in this connection on the one side that the amendment of 1897 is, in effect, a restriction on the powers previously vested in the defendant railroad company, and, on the other, that the amendment is rather the ex-tinguishment of all right to make the five-cent charge as provided in the contract between the company and the city of Indianapolis, and the substitution therefor of a grant to the company allowing it to fix a three-cent rate. But, however this may be, the reservation by section 11 of the act of 18C1 is of power to amend “this act.” The old statute, with the amendment, must, if the amendment be valid, be now read as a whole. So understood, and on the assumption of validity, it constitutes the law of Indiana for the incorporation of street-railroad companies. But, so understood, the entire law would be special and local. As concerns cities other than Indianapolis, it would be special and local, because it could not apply to the city of Indianapolis. As concerns Indianapolis, it .would be special and local, because it could have no operation upon street- *225 railroad business by corporations in any other city in the state at any time. If such a statute had been originally enacted as a whole, it would have been in conflict with the constitution. The legislature cannot first make a law which is in reality general and of uniform operation, and afterwards amend it so that by force of the amendment it ceases to be general and of uniform operation. The legislature can make no amendment which, if put into the statute originally, would have invalidated the whole. Following the pronouncement of the supreme court of Indiana in Mode v. Beasley, my opinion is that the amendment of 1897 is unconstitutional and void. It is not an amendment within the reservation of the eleventh section of the act of 1861.
I may here add that the words of classification in section 5454 of the Revision of 1894 are not the same as the words used in the amendment here in question, nor as the words used in the statute commented on in the quotation from Mode v. Beasley; while sections 5477-5479 are restrictions on the powers of municipal corporations. It occurs to me to suggest also that, while the words which follow the last semicolon in section 9 as amended in 1897 seem to imply a grant to the city of Indianapolis, yet, since the national as well as the state constitutions provide against any law impairing the obligation of contracts, the legislature could hardly authorize the city, by either a general or special law, to break its contract with the railroad company.
Counsel urge that this bill does not show a cause of action cognizable in chancery against Mr. Wiltsie, the district attorney, since its purpose is to restrain him from instituting criminal prosecutions under color of the amendment of 1897. But this complainant is seeking to protect a property right, and it seems to be law that, when such prosecutions are threatened under color of an invalid statute for the purpose of compelling the relinquishment of a property right, the remedy in chancery is available. Reagan v. Trust Co., 154 U. S. 362, 14 Sup. Ct. 1047, and Lottery Co. v. Fitzpatrick, 3 Woods, 222, Fed. Cas. No. 8,541, in each of which apprehended criminal prosecutions were enjoined, are to the point. Even in the Case of Sawyer, 124 U. S. 200, 8 Sup. Ct. 482, cited by the attorney general, the rule as here stated is plainly recognized; nor do I find it disputed in any case.
It is also contended that this suit cannot be maintained because the state is, in effect, a party defendant, and under the eleventh amendment to the national constitution a state cannot be sued; and, further, that section 720 of the Revised Statutes of the United States inhibits the relief prayed for in this bill as against defendants Wiltsie and the city of Indianapolis. But under the ruling of the supreme court of the United States in Pennoyer v. McConnaughy, 140 U. S. 1, 11 Sup. Ct. 699, and Reagan v. Trust Co., supra, this is not a suit against the state of Indiana, within the sense of the eleventh amendment, nor does it fall within the terms of section 720. It seems to me, on principle, as well as on the very distinct authority of Reagan v. Trust Co. (a case which parallels this in nearly every aspect) and Lottery Co. v. Fitzpatrick, the *226 present controversy falls within the judicial power of the United States*"vested in this court. But counsel for defendants insist that, at all events, a preliminary injunction ought not to issue. They say, if the defendant railroad company will obey the law, and reduce its fares to three cents, the damage prior to final hearing will be inconsiderable or nothing. But, suppose the alleged law to be invalid, and suppose the defendant railroad company declines to obey it. In the Reagan Case, above cited, the same argument could have been used, yet there the preliminary injunction was issued. So, also, in Lottery Co. v. Fitzpatrick, wherein is discussed at length the question whether or not the preliminary injunction should issue. How can the point as to the validity of the amendment of 1897 be presented on any subsequent hearing more distinctly than on this? My opinion is that, where proceedings in effect destructive of a vested property right are threatened by a defendant in official position under color of a void statute, the preliminary injunction ought to issue.
The suggestion by the learned attorney general that, in any event, this court ought not to consider the case made by this bill until the supreme court of Indiana has pronounced upon the specific enactment in contention, is one which I have no right to entertain. It is ordered that the injunction issue as prayed.