City of Indianapolis v. Navin.

## CITY OF INDIANAPOLIS v. NAVIN.

[Nq. 18,246.   Filed June 11, 1897.   Rehearing denied July 1, 1898.]

STREET RAILWAYS.—*Three Cent Fare Law.—Act of 1897.*—The act of 1897 regulating the fares to be charged by street railways (Acts 1897, p. 201), re-enacts section 9 of the act of 1861, authorizing the incorporation of street railways, section 5450, et seq., Burns' R. S. 1894, wherein no provision was made for the regulation of fares, and adds a proviso regulating fares in cities having a population of 100,000 or more, according to the United States census of 1890. p. 142.

SAME.—*Regulation of Fares.—Three Cent Fare Law.—Impairment of Contracts.*—The legislature has the power to regulate the rates of fare for the transportation of passengers on street railways within the State, and a city has no authority to enter into a contract with a street railway company curtailing such power. p. 142.

SAME.—*Regulation of Fares.—Three Cent Fare Law.*—Section 11 of the act of 1861 (5463, Burns' R. S. 1894), authorizing the incorporation of street railways, expressly reserves to the legislature the right to amend or repeal such act; the right of the legislature, however, to regulate the fare upon street railways organized under such act, does not depend upon such reservation. p. 143.

SAME.—*Regulation of Fares.—Exemption From Legislative Control.* —In order to exempt a common carrier from legislative control over its rates of fare, it must appear that the exemption was made in its charter by clear and unmistakable language. p. 143.

SAME.—*Contract with Cities.—Legislative Control.*—A city has the power to prescribe the terms upon which a street railway company organized under the act of 1861 shall occupy the streets thereof, but such contract is subject to the right of the legislature to amend or repeal the act at its pleasure, and no contract made by a city with a street railway company could prevent the exercise of such power. pp. 143, 144.

CONSTITUTIONAL LAW.—*Special Legislation.—Street Railways.*—A

| | |
|---|---|
| 151 | 139 |
| 152 | 226 |
| 151 | 139 |
| 153 | 72 |
| 153 | 463 |
| 151 | 139 |
| 155 | 203 |
| 155 | 381 |
| 151 | 139 |
| 158 | 266 |
| 158 | 435 |
| 158 | 488 |
| 158 | 577 |
| 151 | 139 |
| 159 | 579 |
| 151 | 139 |
| 162 | 204 |
| 151 | 139 |
| 164 | 120 |
| e164 | 125 |
| e164 | 126 |
| 151 | 139 |
| 167 | 64 |
| 167 | 66 |
| 168 | 274 |
| 151 | 139 |
| 169 | 631 |

City of Indianapolis *v.* Navin.

law which applies to cities having a population of 100,000 or more, when there is but one such city in the State, and is so framed as to operate on all other cities in the State as they acquire such population, is a general law within the meaning of section 23, article 4 of the constitution declaring that all laws shall be general and uniform throughout the State. *p. 145.*

CONSTITUTIONAL LAW.—*Street Railways.*—*Regulation of Fares.*—It is not necessary that a law regulating the fares to be collected by street railway companies shall operate uniformly on all street railways of the State, it is sufficient if it operates alike upon all such companies under the same circumstances and conditions. *p. 145.*

CITIES.—*Population.*—*Last Preceding Census.*—*Street Railways.*—*Three Cent Fare Law.*—Where a statute provides that all cities or towns of a named population, "according to the last preceding United States census," shall be governed by the provisions of the act, all cities or towns as they acquire the requisite population, as shown by any census thereafter taken, will be governed by the act the same as if they had the required population as shown by the last preceding census when the law was enacted. *p. 146.*

CONSTITUTIONAL LAW.—*Special Legislation.*—*Corporations.*—Where a coporation has been created, a special act regulating it without changing the organization of the corporate body is not within the prohibition of section 13 of article 11 of the constitution. *pp. 147-154.*

SAME.—*Special Legislation.*—*Street Railways.*—*Three Cent Fare Law.*—The act of 1897 regulating the fares to be charged by street railways (Acts 1897, p. 201), is a mere regulation of an existing corporation, and even if said act is local and special, it is not forbidden by section 22 of article 11 of the constitution enumerating certain cases where special laws shall not be enacted. *pp. 153, 154.*

SAME.—*Special Legislation.*—*Street Railways.*—*Three Cent Fare Law.*—*Corporations.*—Where a local or special law is enacted upon a subject not enumerated in section 22, article 11 of the constitution, it is the expressed opinion and judgment of the legislature that a general law cannot be made applicable, and such judgment is not subject to review by the courts. *p. 155.*

SAME.—*Special Legislation.*—*Street Railways.*—*Three Cent Fare Law.*—The legislature of 1861 by passing the general law for the incorporation of street railways could not and did not deprive any subsequent legislature of the right to determine whether a general law fixing the maximum fare on street railways could or could not be made applicable, and if the act of 1897 is not a general law, the enactment of the same is the expressed opinion and judgment of the legislature that a general law could not be made applicable, and this judgment cannot be reviewed by the courts. *p. 156.*

City of Indianapolis *v.* Navin.

COURTS.—*Construction of Statutes.*—The interpretation and construc-
tion of the statutes of this State with reference to their relation to
the State constitution, and the constitutionality thereof, are ques-
tions to be determined by the Supreme Court of the State, and the
rule is that such interpretations are binding upon the federal courts,
and will be adopted by them.   *p. 158.*

From the Marion Circuit Court.   *Affirmed.*

*John W. Kern* and *James B. Curtis,* for appellant.
*W. A. Ketcham,* Attorney-General, and *Frederick
E. Matson,* for appellee.

MONKS, J.—This action was brought by appellant
to collect the penalty provided for the violation of an
ordinance, in refusing to pay the fare of five cents
prescribed by said ordinance for riding upon a car of
the Citizens' Street Railway Company.   Appellee filed
an answer admitting the passing of the ordinance,
and its validity, and that he had ridden as alleged,
and had refused to pay the fare of five cents de-
manded, but justified such refusal under the act ap-
proved March 6, 1897 (Acts 1897, p. 201), amending
section 9 of the law providing for the incorporation
of street railways, and adding supplemental sections
thereto, alleging that he had tendered the full fare
of three cents as provided by said act, but the con-
ductor in charge of the car refused to receive the
same, appellee claiming that after the passage of
said act, the ordinance was of no validity, except so
far as it required the payment of three cents in
place of five as prescribed by said ordinance.
To this answer appellants replied, denying the valid-
ity of the act in question, for the reason that the leg-
islation was purely local and special, and therefore
invalid, because in violation of the constitutional pro-
vision on that subject.   Appellee's demurrer to this
reply was sustained.   Appellant refusing to plead
further, judgment was rendered in favor of appellee.

The only error assigned calls in question the action of the court in sustaining the demurrer to said reply. If said act of March 6, 1897, is unconstitutional, the judgment of the court below must be reversed; but, if constitutional, the judgment must be affirmed.

The act authorizing the incorporation of street railway companies was approved Jan. 4, 1861. Acts Spec. Sess. 1861, p. 75. Section 5450, *et seq.*, Burns' R. S. 1894 (4143, *et seq.*, R. S. 1881). Section 9 of said act being section 5458, Burns' R. S. 1894 (4151, R. S. 1881), provides that "The directors of such company shall have power to make by-laws  *  *  *  for regulating the fare of said road or roads." In this act the legislature made no provision for the regulation of the fares, but left the same to the discretion of the board of directors until the legislature should see fit to make other provisions. The act of 1897 re-enacts said section, with a proviso "that in cities in this State having a population of 100,000 or more, according to the United States census of 1890, the cash fare shall not exceed three cents for any one trip or passage upon the street railroad or roads," with transfer. It is insisted by appellant that the act of 1897 is unconstitutional because it impairs the obligation of a contract. Counsel for appellant do not point out any contract, the obligation of which is impaired by said act. If it is the contract under which the street railway company took possession of the streets of Indianapolis and constructed its tracks, it is sufficient to say that the city was not authorized to enter into any contract which would prevent the legislature from legislating upon the subject of fares. It is settled law that the legislature has the power to reasonably regulate the rates of fare for the transportation of passengers within the State on street railways. *Hockett* v. *State*, 105 Ind. 250, 258, 259; *Central*

*Union Telephone Co.* v. *Bradbury*, 106 Ind. 1; *Central Union Telephone Co.* v. *Falley*, 118 Ind. 194; *Ruggles* v. *Illinois*, 108 U. S. 526, 531; *Stone* v. *Farmers' Loan and Trust Co.*, 116 U. S. 307, 325; *Dow* v. *Beidelman*, 125 U. S. 680, 688; *Covington, etc., Bridge Co.* v. *Kentucky*, 154 U. S. 204, 213–215; *Covington, etc., Turnpike Road Co.* v. *Sandford*, 164 U. S. 578, 17 Sup. Ct. 198; *Wellman* v. *Chicago, etc., R. W. Co.*, 83 Mich. 592, 47 N. W. 489; *St. Louis, etc., R. W. Co.* v. *Gill*, 54 Ark. 101, 15 S. W. 18, 11 L. R. A. 452, and note. Besides, section 11 of said act of 1861, being section 5463, Burns' R. S. 1894 (4153, R. S. 1881), expressly reserves to the legislature the right to amend or repeal said act at its discretion. The right of the legislature, however, to regulate the fare upon street railroads organized under the act of 1861, does not depend upon the reservation in section 11 of the right to amend or repeal said act. That power would exist even if the right to amend or repeal the act had not been reserved. In order to exempt a common carrier from legislative control over its rates of fare, it must appear that the exemption was made in its charter by clear and unmistakable language, inconsistent with the exercise of such power by the legislature. *Covington, etc., Turnpike Road Co.* v. *Sandford, supra; Georgia Banking Co.* v. *Smith*, 128 U. S. 174; *Chicago, etc., R. R. Co.* v. *Iowa*, 94 U. S. 155.

Appellant had the power to prescribe the terms upon which, and the time for which, a street railroad company organized under said act of 1861 should occupy the streets of said city; but such contract, when made, was subject to the right of the legislature to amend or repeal said act at its discretion, and no contract made by the city with a street railroad company could prevent the exercise of such power by the legislature. It is clear, therefore, that said act

of 1897 does not impair the obligation of any valid contract of either the State or appellant. The right to regulate the fares on street railroads, however, does not include the power to require said companies to carry passengers without reward, or for such sum as would amount to confiscation or the taking of property without compensation or due process of law. A statute containing such requirements would be in violation of the provisions of the constitution of the State, as well as the provisions of the constitution of the United States. *Chicago, etc., R. R. Co. v. Iowa, supra; Munn v. Illinois,* 94 U. S. 113; *Stone v. Farmers' Loan and Trust Co., supra; Georgia Banking Co. v. Smith, supra; Chicago, etc., R. W. Co. v. Minnesota,* 134 U. S. 418; *Budd v. New York,* 143 U. S. 517; *Brass v. North Dakota,* 153 U. S. 391; *Covington, etc., Bridge Co. v. Kentucky,* 154 U. S. 204, 213, 214; *Covington, etc., Turnpike Road Co. v. Sandford, supra; Attorney General v. Old Colony R. R. Co.,* 160 Mass. 62, 86–91, 96, 97, 35 N. E. 252, and cases cited; *State v. Fremont, etc., R. R. Co.,* 23 Neb. 117, 36 N. W. 305; Note to *Cleveland, etc., R. W. Co. v. Closser,* 9 L. R. A. 754. No facts alleged in either the complaint or reply show that the act of 1897 fixing the fare at three cents, by its necessary operation deprives any street railway company of its property without compensation or due process of law. Therefore that question is not presented for our determination. *Dow v. Beidelman, supra; Covington, etc., Turnpike Road Co. v. Sandford, supra.*

It is next insisted by counsel for appellant that although the right to amend or repeal said act was reserved by the legislature, said amendment is a local and special act, and is therefore in conflict with section 13 of article 11 of the constitution, which

provides that "corporations, other than banking, shall not be created by special act, but may be formed under general laws." The power to declare a statute unconstitutional is one of the highest intrusted to a judicial tribunal, and is only to be exercised with the greatest care, and only when there is no doubt of the unconstitutionality of the law. If there is any doubt in the mind of the court as to the constitutionality of a law, it must be resolved in favor of its validity. To doubt is to resolve in favor of the constitutionality of the law. *Citizens' Street R. R. Co.* v. *Haugh*, 142 Ind. 254, and cases cited; *State, ex rel.*, v. *Roby*, 142 Ind. 168. It is not necessary, under the provisions of section 23 of article 4, declaring that all laws shall be general and uniform throughout the State, that legislation concerning cities should operate uniformly on all the cities in the State, to make it general. A law which applies to cities having a population of 100,000 or more, when there is but one such city, and is so framed as to operate on all other cities in the State as they acquire the necessary population, is a general law, because it operates upon all cities alike, under the same circumstances. *Pennsylvania Co.* v. *State*, 142 Ind 428. Neither is it necessary that a law concerning the fares to be collected by street railroad companies shall operate uniformly on all street railroads in the State. It is sufficient if it operates alike upon all such companies under the same circumstances and conditions. Such a law is general, within the meaning of the constitution. *Pennsylvania Co.* v. *State, supra,* and cases cited; *Bell* v. *Maish*, 137 Ind. 226; *Young* v. *Board, etc.*, 137 Ind. 323; *Gilson* v. *Board, etc.*, 128 Ind. 65, 69 and cases cited; *Elder* v. *State*, 96 Ind. 162; *Heanley* v. *State*, 74 Ind. 99; *State, ex rel.*, v. *Reitz*, 62 Ind. 159; *Hanlon* v. *Board, etc.*, 53 Ind.

123; *Groesch* v. *State*, 42 Ind. 547; Note to *State* v. *Ellet*, 47 Ohio St. 90, 21 Am. St. 780–789, 23 N. E. 931.

Counsel for appellant seem to understand that this court held in *Mode* v. *Beasley*, 143 Ind. 306, that the words "last preceding census," refer only to the last census taken before the passage of the act, and not to any census that may be taken after the act was passed. The rule is otherwise. Such words in a statute refer to the census last taken, whether before or after the passage of an act, unless the contrary appears in the act itself. So that, although a city or town may not have the required population when the act was passed, yet at any time in the future when any census taken after the passage of the act shows that the necessary population has been acquired, such city is governed by the provision of the act; that is, when a statute provides that all cities or towns of a named population "according to the United States census," or "according to the last preceding United States census," shall be governed by the provisions of the act, then all cities or towns, as they acquire the requisite population, as shown by any census thereafter taken, will be governed by the act, the same as if they had the required population as shown by the last preceding census when the law was enacted.

What was said in *Mode* v. *Beasley*, *supra*, in regard to the city of Indianapolis, and the charter by which it was governed, was by way of illustrating what constituted a local or special law, and the difference between such laws and a general law; and any statements concerning the act approved March 9, 1891 (Acts 1891, pp. 137-197), being a local law, or that municipal corporations are not within the prohibition of said section 13, article 11, were not necessary to the deter-

mination of said cause, and were *obiter dicta.* Section 13 of article 11 of the constitution means that after it took effect, on November 1, 1851, the legislature should have no power or authority to create, originate, or bring into existence by special act a new corporation where none had previously existed. *Wiley* v. *Corporation of Bluffton,* 111 Ind. 152, 155.

When the present constitution of 1851 went into effect on November 1, 1851, there were a great number of corporations in this State which had been created by special acts. The legislature, commencing with its first session of 1852, after the constitution took effect, again and again, by special acts, enlarged the powers and privileges of such corporations, but in no instance created a corporation by special act, thus recognizing the difference between the creation of a corporation and the regulation of a corporation already in existence. There sat as members of the legislature passing such acts many persons who had been members of the constitutional convention, and who were familiar with the provisions of the constitution and its intended reforms and changes. No one questioned the right of the legislature to pass such special acts, and for over forty-five years the power assumed by the legislature has never been challenged, but has been acquiesced in by the State and people. This practical construction is influential. *French* v. *State, ex rel.,* 141 Ind. 618, 628; *Hovey* v. *State, ex rel.,* 119 Ind. 386; *City of Terre Haute* v. *Evansville, etc., R. R. Co.,* 149 Ind. 174, and cases cited.

It is one thing to create a corporation, bring it into existence, and quite another, as an existing corporation, to regulate its conduct and relations as to other corporations and persons. It has been decided in many cases that, when a corporation has been created, a special act regulating it, without changing the

organization of the corporate body, is not within the prohibition. *Wilkins* v. *State*, 113 Ind. 514; *Central Ag., etc., Ass'n* v. *Alabama, etc., Insurance Co.*, 70 Ala. 120; *Attorney General* v. *North American Life Ins. Co.*, 82 N. Y. 172; *In re New York Elevated R. R. Co.*, 70 N. Y. 327, 337, 338; *In re Application of Church*, 92 N. Y. 1, 4; *Syracuse City Bank* v. *Davis*, 16 Barb. (N. Y.) 188; *Southern Pacific R. R. Co.* v. *Orton*, 32 Fed. 457; *Green* v. *Knife Falls Boom Corporation*, 35 Minn. 155, 27 N. W. 924; *St. Paul, etc., Ins. Co.* v. *Allis*, 24 Minn. 75; *Cotton* v. *Mississippi, etc., Co.*, 22 Minn. 372; *St. Joseph, etc., R. R. Co.* v. *Shambaugh*, 106 Mo. 557, 17 S. W. 581; *State* v. *Cape Girardeau, etc., R. R. Co.*, 48 Mo. 468; *Attorney General* v. *Joy*, 55 Mich. 94, 106, 107, 20 N. W. 806; *Wallace* v. *Loomis*, 97 U. S. 146; Morawetz on Corp., section 12; Clark on Corp., pp. 43-45.

In *Wilkins* v. *State, supra,* this court, by Elliott, J., said: "The provision which it is asserted the act violates, is this: 'Corporations, other than banking, shall not be created by special act, but may be formed under general laws.' It cannot, with the faintest tinge of justice, be affirmed that the simple delegation of authority to appoint three men to perform duties affecting the public is the creation of a new corporation. Changes of infinitely more importance have been held not to create a new corporation. *Wallace* v. *Loomis*, 97 U. S. 146; *Attorney General* v. *North American L. Ins. Co.*, 82 N. Y. 172; *Southern Pacific R. R. Co.* v. *Orton*, 6 Sawyer 157, 32 Fed. 457. The general rule is thus stated by a late writer: 'A special act of the legislature regulating an existing corporation, or granting to it new privileges, without altering its character or affecting the charter contract, would not be in violation of the letter nor the

spirit of a constitutional prohibition of this descrip-tion. Morawetz Corp., section 12. The case of *Wiley* v. *Corporation of Bluffton,* 111 Ind. 152, declares a similar doctrine." It was held *In re New York Elevated R. R. Co., supra,* and *In re Application of Church, supra,* that where a local act merely confirms and regulates franchises previously possessed by a corporation, and does not confer any new franchises, is not obnoxious to the provision of the constitution, which provides "the legislature shall not pass a private or local act granting any corporation, association or individual the right to lay down any railroad tracks," or that prohibits the legislature from "granting to any pri-vate corporation, association, or individual any ex-clusive privilege, immunity or franchise whatever."

The North American Life Insurance Company was formed under general laws. In 1866 (Session Laws of 1866, Vol. 2, p. 1237, Chap. 576), it was enacted by the legislature that the company might make spe-cial deposits of its securities in the insurance depart-ment, and in the case of the *Attorney-General* v. *North American Life Insurance Co., supra,* the validity of this act was questioned, it being claimed that it was in violation of section 1 of article 8, but the act was held constitutional, the Court, Earl, Judge, saying at p. 182: "The plain answer to this contention is, that the act did not create a corporation, but simply regulated a corporation previously in existence." In *Southern Pacific R. R. Co.* v. *Orton, supra,* the legislature of Cali-fornia had passed an act authorizing the Southern Pa-cific Railroad Company to change the line of its road, accept a congressional grant of land, and construct its road as provided in the act of congress incorpora-ting the Atlantic & Pacific Railroad Company; and it was contended that the act was unconstitutional, being in violation of the provision of the constitution.

City· of Indianapolis *v.* Navin.

But this contention was not sustained by the court, ·Sawyer, Justice, saying, at p. 472: "But it is insisted that this act was passed in violation of the provisions of· section 31 of article 4 of the constitution of California, which reads, 'Corporations may be formed under general laws, but shall not be created by special act, except for municipal purposes.' \* \* \* What does the constitutional prohibition relied on mean? The only prohibitory words are, that corporations of the. class in question 'shall not be created by special act.' The word 'create' has a clear, well-settled, and well-understood signification. It means to bring into being; to cause to exist; to produce; to make, etc. To my apprehension, it appears to be one thing to create, or bring into being, a corporation, and quite another to deal with it as an existing entity, a person, after it is created, by regulating its intercourse, relations, and acts as to other existing persons, natural and artificial. \* \* \*."

In the *St. Paul, etc., Ins. Co.* v. *Allis, supra,* the appellant had been organized as a mutual insurance company, and afterwards a law was passed making it an exclusively stock company. It was contended that that was in violation of the clause in the constitution prohibiting the formation of corporations by special act. But the court said: "We think it is not obnoxious to that clause of our constitution which forbids the formation of corporations by special act. Its effect is only to authorize the company created by the acts of 1853 to exercise its subsisting franchise of carrying on the business of fire and marine insurance in a manner different from that prescribed by·the original charter. This is by no means the formation of a new corporation, for both the franchise of corporate existence as well as the general business and purpose of the incorporation as prescribed by the original

charter, remain unchanged." In *Cotton* v. *Mississippi, etc., Co., supra,* the appellee had been created a corporation for the period of fifteen years. In 1867 the charter was amended by striking out the words "for the period of fifteen years," and changing the form of proceedings for condemnation. It was held that neither of the amendments violated the provision of the constitution prohibiting the formation of corporations under special act, the court saying at p. 374: "In making these amendments the legislature did not, as plaintiff contends, exceed its authority, since neither of the amendments falls within that provision of our constitution which prohibits the formation of corporations under special acts." In *Green* v. *Knife Falls Boom Corp., supra,* the "Boom Corporation" was organized under a general law. Soon after its organization the legislature passed a special act conferring enlarged powers upon the corporation, within the St. Louis river, and over the navigation and use thereof, as respects the passage of logs, including the right of eminent domain; the right to charge compensation for boomage, in the nature of tolls, prescribed by the act, upon all logs passing through their works, and to receive and take entire charge and control of all logs and timber which might run, come, or be driven within the same, and to boom, scale, and deliver them as provided in such act. The court held that, while said special act enlarged the business of the corporation, it was not in conflict with the provision of the constitution prohibiting the formation of corporations by special act.

In *Cent. Ag., etc., Ass'n* v. *Alabama, etc., Insurance Co., supra,* a corporation was intended to be organized under the general law authorizing the formation of private corporations; but certain requirements of the statute had not been complied with, without which

the incorporation was not lawful or complete. Subsequently the legislature passed a special act authorizing the corporation to increase its capital stock, and the board of directors to adopt rules and regulations for its government, and declaring the existence of the corporation, and approving and ratifying its organization. The court held, that said special act was not in conflict with the Alabama constitution of 1868 declaring that "corporations may be formed under general laws, but cannot be created by special act except for municipal purposes." The court said: "The statute does not form, or create a corporation. Before the time of its enactment, the corporation was formed, existed, *de facto*, having color of right." In *Wallace* v. *Loomis*, *supra*, it was held that the provision in the constitution of Alabama, which declared that corporations may be formed under general laws, but shall not be created by special act, except for municipal purposes, does not prohibit the legislature from passing a special act changing the name of an existing railroad corporation, and giving it power to purchase the railroad and franchise of another company. The court, by Mr. Justice Bradley, saying as to this contention, at p. 154: "We are unable to see anything in this legislation repugnant to the constitutional provision referred to. That provision cannot, surely, be construed to prohibit the legislature from changing the name of a corporation, or from giving it power to purchase additional property; and this was all that it did in this case. No new corporate powers or franchises were created." This case is in no way overruled or modified by the case of *School District* v. *Insurance Co.*, 103 U. S. 707. The case last named was governed by the constitution of Nebraska which provided that "The legislature shall pass no special act conferring corporate powers," and the Su-

preme Court of the United States followed the construction given to said provision by the supreme court of Nebraska in *Clegg* v. *School District*, 8 Neb. 178. The case of *Wallace* v. *Loomis* was decided under the provision of the constitution of Alabama, which is the same as section 13, article 11 of the constitution of this State, and is not the same as the provision in the Nebraska constitution against conferring corporate powers by special act as construed by the supreme court of that state in *Clegg* v. *School District*, *supra*. The difference is recognized in *State* v. *Dawson*, 16 Ind. 40.

It was, however, correctly said in Morawetz on Corporations, section 12: "But it is plain that a constitutional provision cannot be avoided and practically annulled by a subterfuge. A special law altering the charter of an existing corporation, and practically changing it, must therefore be deemed a violation of a constitutional prohibition against the creation of corporations by special act. If this were not so, organizations formed under the general laws might be treated merely as the rough material out of which corporations might afterwards be fashioned at pleasure, under special acts of the legislature, and the constitutional prohibition would become an empty form."

By the act in question no new corporate power or franchise was created. The directors could regulate the fare after the amendment the same as before, subject to the common law limitation of reasonableness, except that, in cities of a population of 100,000 or more, according to the census of 1890, the maximum fare could not exceed three cents. This is a mere regulation of an existing corporation, and even if said act is, as contended by appellant, local and special, it is not in conflict with said section 13 of article 11 of the constitution, which only forbids the creation of cor-

porations by special act, and provides that they may be formed under general law. No new corporation was created or formed by the act of 1897. Said act was a mere regulation fixing the maximum rate of fare to be collected by all street railroad companies in cities of 100,000 or more population according to the United State census of 1890. Even if said act is local (which we need not and do not decide), it is not special, for the reason that it applies alike to all street railroads that are now or may hereafter be operated in such locality, whether there be one or many.

Said act, by amending section 9 of the act of 1861 did not render said last named act either local or special. Corporations may be organized under the law of 1861 for the construction of street railroads in the cities and towns within the State, the same now as before the amendment of section 9. All the cases cited by counsel for appellant in support of their contention, except *San Francisco* v. *Spring Valley Water Works*, 48 Cal. 493, and *Central Trust Co.* v. *Citizens Street R. R. Co.*, 80 Fed. 218, are based upon constitutional provisions radically different from the provisions of the constitution of this State. The cases named are against the great weight of authority, and interpolate into the constitution, words the people have not placed there. Besides, the case of *San Francisco* v. *Spring Valley Water Works*, *supra*, was decided by a divided court, and is in conflict with the decision of that court in *California State Telegraph Co.* v. *Alta Telegraph Co.*, 22 Cal. 425.

Much is said by counsel for appellant about the evils of local and special legislation, but we cannot amend or change the constitution, or read into it what is not there written, merely to avoid either certain or supposed danger. We can only declare that the constitution means what it says. It follows that the power

to regulate existing corporations, either by amendment or independent act, is only limited by section 23 of article 4 of the constitution, which provides that "in all cases enumerated in the preceding section, [22], and in all other cases where a general law can be made applicable, all laws shall be general, and of uniform operation throughout the State." Section 22, article 4, (the section referred to in said section 23), provides that the "General Assembly shall not pass local or special laws in any of the following enumerated cases," naming seventeen subjects. Where special laws are not forbidden by the constitution, they may be enacted. That part of said act fixing the fare at three cents, even if local and special, is not in violation of said section 22, because that subject is not included in the enumeration found in said section.

It has been uniformly held by this court, since *Gentile* v. *State*, 29 Ind. 409, that whether an act relating to a subject not enumerated in section 22 of article 4, can or cannot be made by general law, as required by section 23 of article 4, is a question to be determined exclusively by the legislature, and not by the courts. *Woods* v. *McCay*, 144 Ind. 316, 322, and cases cited; *Mode* v. *Beasley*, 143 Ind. 306; *Pennsylvania Co.* v. *State*, 142 Ind. 428; *Young* v. *Board, etc.*, 137 Ind. 323; *Bell* v. *Maish*, 137 Ind. 226; *State, ex rel.*, v. *Kolsem*, 130 Ind. 434; *Hovey* v. *Foster*, 118 Ind. 502; *City of Evansville* v. *State, ex rel.*, 118 Ind. 426, 4 L. R. A. 93; *Wiley* v. *Corporation of Bluffton*, 111 Ind. 152; *Warren* v. *City of Evansville*, 106 Ind. 106; *Johnson* v. *Board, etc.*, 107 Ind. 15; *Kelly* v. *State, ex rel.*, 92 Ind. 236; *Mount* v. *State, ex rel.*, 90 Ind. 29; *Vickery* v. *Chase*, 50 Ind. 462; *State, ex rel.*, v. *Tucker*, 46 Ind. 355; *Clem* v. *State*, 33 Ind. 418. When, therefore, a local or special law is enacted upon a

subject not enumerated in section 22, it is the expressed opinion and judgment of the legislature that a general law cannot be made applicable, and this judgment is not subject to be reviewed by the courts. *State, ex rel.,* v. *Kolsem, supra; Mode* v. *Beasley, supra,* p. 315; *Woods* v. *McCay, supra,* p. 322 and cases cited. The legislature of 1861 by passing the act for the incorporation of street railroad companies (a general law), could not and did not deprive any subsequent legislature of the right to determine whether a general law fixing the maximum fare on street railroads could or could not be made applicable. If the act in controversy is not a general law, as insisted by appellant, then, under the authorities, the enactment of the same is the expressed opinion and judgment of the legislature that a general law could not be made applicable, and this judgment cannot be reviewed by the courts.

It follows, that the act approved March 8, 1897 (Acts 1897, p. 201), so far as involved in this case, is constitutional and valid. Said act rendered the ordinance regulating the payment of a fare of five cents invalid and of no effect. Appellee was entitled to be carried for the fare of three cents fixed by the act in controversy, and was not liable for a refusal to pay more than that, for the reason that the ordinance requiring the payment of a fare of five cents was rendered invalid by said act. Judgment affirmed.

### On Petition for Rehearing.

Per Curiam.—In this case the principal contention was that the act of March 6, 1897, amending section 9 of the act to provide for the incorporation of street railroad companies, was inoperative and void because in contravention of section 13 of article 11 of the constitution of this State. In arriving at the conclu-

sion reached in the original opinion, we had the benefit of the opinion of the circuit justice, delivered in the case of the *Central Trust Co.* v. *Citizens' Street R. R. Co.*, reported in 80 Fed. 218, and also of the very able argument addressed to the justice in that case by the eminent counsel for the complainant.

After carefully considering, not only the arguments presented in this case, but also the arguments and opinion referred to, and all the light that we could obtain upon the question, we were constrained to hold that the contention that the legislation in question was in violation of the constitution of this State was without just foundation, and that the act was in harmony therewith. The question thus presented to us was purely one arising upon the construction of the constitution of this State. Such a question, when presented to this court, is one that it must decide upon its own judgment as to the requirements of the state constitution. While in search of assistance and information to enable us to decide such a question correctly, it is eminently proper and necessary that we should examine, weigh, and consider, not only the arguments of counsel, but also the adjudications of courts and the opinions of judges, in other jurisdictions, upon similar or analogous provisions of this or other constitutions, and give to them such weight as in our opinion they are justly entitled to; but, after that has been done, the responsibility rests upon us, and us alone, and that responsibility cannot be shirked, evaded, or avoided.

What the constitution of the United States and the laws of Congress, or treaties made thereunder, require, is to be finally determined by the Supreme Court of the United States; and its decisions, when made upon such questions, are binding upon the courts in every state, "anything in the constitution or

laws of any state to the contrary notwithstanding."
Cooley Const. Lim. (6th ed.) pp. 18-23; Black on Inter-
pretation of Laws, pp. 378-380, 427-429; 23 Am. & Eng.
Ency. of Law, pp. 37-40, and cases cited.

The interpretation and construction of the statutes
of this State, and whether the same have been enacted
in accordance with the requirements of the constitu-
tion of this State, and are or are not in violation of
any provision of the constitution of this State, how-
ever, are questions to be finally determined by this
court, and by this court alone.   The rule is that the
construction put upon the constitution and laws of a
state by the court of last resort of such state, and the
decision of such court that a law has or has not been
passed in conformity with the requirements of the
constitution of such state, or that the same is or is not in
violation of the constitution of such state, are binding.
upon the federal courts and will be adopted by them.
Black on Interpretation of Laws, pp. 378-381, 427-
429; 23 Am. & Eng. Ency of Law, pp. 37-40, and cases
cited; Cooley on Const. Lim., pp. 18-23; Black's Const.
Law., p. 140; 35 Central Law Journal, 322; *Goodnow* v.
*Wills*, 67 Iowa 654; *May* v. *Tenney*, 148 U. S. 60, 64,
65; *Balkam* v. *Woodstock Iron Co.*, 154 U. S. 177,
187-189; *Pittsburgh, etc., R. W. Co.* v. *Backus*, 154
U. S. 421; *Leeper* v. *Texas*, 139 U. S. 462, 467; *Mor-
ley* v. *Lake Shore, etc., R. W. Co.*, 146 U. S. 162,
166-169; *Bauserman* v. *Blunt*, 147 U. S. 647, 652-
659; *Oakes* v. *Mase*, 165 U. S. 363; *Forsyth* v.
*Hammond*, 166 U. S. 506, 518-520; *Long Island Water
Supply Co.* v. *Brooklyn*, 166 U. S. 685, 688; *Mer-
chants, etc., Bank* v. *Pennsylvania*, 167 U. S. 461,
462; *Water Power Co.* v. *Water Commissioners*, 168
U. S. 349, 357; *Backus* v. *Fort St. Union Depot Co.*,
169 U. S. 557, 566; *Dibble* v. *Bellingham Bay Land*

*Co.*, 163 U. S. 63; *Illinois Central R. Co.* v. *State of Illinois*, 163 U. S. 142; *Nobles* v. *State of Georgia* (U. S.), 18 S. C. Rep. 87; *McCain* v. *City of Des Moines*, 84 Fed. 726; *Leighton* v. *Young*, 52 Fed. 439; *Western Union Tel. Co.* v. *Poe*, 64 Fed. 9; *Crowther* v. *Fidelity Insurance, etc., Co.*, 85 Fed. 41; *Hill* v. *Hite*, 85 Fed. 268; *Hoge* v. *Magnes*, 85 Fed. 355.

Since the decision of this case, and the filing of the petition for a rehearing, our attention has been called by appellant's brief on said petition to the decision of the United States Circuit Court in the case of *Central Trust Co.* v. *Citizens' Street R. W. Co.*, 82 Fed. 1, in which the learned judge, who had arrived at a different conclusion before the announcement of our opinion upon the question, adhered to his original conclusion, notwithstanding the opinion announced by this court. We have also examined the opinion, upon appeal, in the Circuit Court of Appeals, 83 Fed. 529, and have carefully re-examined the question presented in this regard, not simply as a matter of courtesy to a high court, but constrained thereto by the duty which is cast upon us by the presentation of the petition for a rehearing. We have done this, not alone because of the importance of the question, but because of the misfortune to the community and the parties especially interested in a correct decision of the question, that this court should differ from the Circuit Court of the United States upon the question, Upon such re-examination, we are constrained to adhere to our original opinion, that the act in question, even if local and special, is not in contravention of any of the provisions of the constitution of this State, as contended by the appellant. As the power to amend or repeal the act of 1861 was expressly reserved in section 11 of said act, and as the act of 1897

was a valid amendment of said act of 1861, it is not material whether or not the legislature would have had the power to regulate the fare upon street railroads organized under said act if said section 11 had been omitted therefrom.

In arriving at the conclusion that the act of 1897 is not in contravention of any provision of the constitution of this State, it has not been necessary for us to consider any questions arising under the constitution of the United States. As to such questions, we should be constrained to follow the adjudications of the Supreme Court of the United States, if any, without in any wise considering whether such a construction should or should not commend itself to our independent judgment. But upon the requirements of the constitution of this State, we are not at liberty to set aside or discard our own views because of the fact that they do not meet with the concurrence or approbation of any other court, however high, or any judge, however eminent. We do not deem it necessary to add anything further to what we have heretofore said upon the questions involved, but adhering to the opinion originally pronounced in this case, the petition for a rehearing is overruled.